MARGARET WILLIAMS PITTS, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, PLAINTIFF v. AMERICAN SECURITY INSURANCE COMPANY, AMERI-CAN SECURITY INSURANCE GROUP, STANDARD GUARANTY INSURANCE COMPANY, AND WACHOVIA BANK OF NORTH CAROLINA, N.A., DEFENDANTS

No. COA00-703

(Filed 5 June 2001)

**1. Appeal and Error— appealability—order denying class certification**

An order denying class certification, though interlocutory, affects a substantial right and is appealable.

**2. Class Action— motion for certification—prerequisites**

When considering a motion for class certification pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, the trial court must first determine whether the party seeking certi-fication has met its burden of showing that the three prerequi-sites to certification have been met: the first is the existence of a class; the second is that the named class representative will fairly and adequately represent the interests of all class mem-bers; and the third is that the proposed class members are so numerous that it is impractical to bring them all before the court. If all the prerequisites are established, the court must determine whether a class action is superior to other available methods for the adjudication of the controversy.

**3. Class Action— existence of class—individual defenses—actions for fraud—common issues of law and fact**

The trial court erred when it found that a class did not exist in an action arising from a collateral protection insurance program where the court considered possible defenses and found that a class necessarily does not exist in actions for fraud. The relevant inquiry is whether the common issues of law and fact predominate over the individual merits and damages. The potential individual issues here are outweighed by the common issues of law and fact.

**4. Class Action— certification of class—adequacy of class representative—factors**

The trial court erred when ruling on the adequacy of a class representative in an action arising from a collateral protection insurance program by considering alleged conflicts of interest relating to damages where the findings did not demonstrate an actual conflict, only a difference; an alleged lack of knowledge surrounding the allegations of the complaint, since a class representative is not rendered unsuitable because she lacks knowledge of the details of her case or the legal theories presented; that some of plaintiff's claims may be barred by the statute of limitations, but the issue of whether a plaintiff might ultimately prevail on the merits of her claim is not a proper consideration for whether she is an adequate class representative because a substitute representative may be provided; and that plaintiff did not seek counsel to redress a perceived wrong, because focus must be on plaintiff's adequacy as a class representative, not how she became aware of her claim. The only remaining finding regarding plaintiff's adequacy as a class representative is a criminal record that includes worthless check charges, but that record does not render her inadequate to represent the interests of the proposed class when weighed against all other factors.

**5. Class Action— certification of class—numerosity requirement**

A class action plaintiff's allegations of the existence of a class "reasonably believed to be in excess of 1,000 persons" and that the identity of the proposed class members could be determined from defendants' records was sufficient to satisfy the numerosity requirement for certification in an action arising from a collateral protection insurance program.

PITTS v. AMERICAN SEC. INS. CO.

[144 N.C. App. 1 (2001)]

### 6. Class Action— certification of class—superior method of determining claim

The trial court erred when it concluded that a class action was not the superior method to determine claims arising from a collateral protection insurance program based on findings that this was a case of de minimus damages, that many of the causes of action required individualized proof, that damages would be based upon individual situations, and that the expansive nature of the proposed class would result in excessive transaction costs and difficulties. The record did not contain any evidence of the amount of damages the class members would recover nor any evidence to support the finding of excessive transaction costs and difficulties, while the findings regarding individualized issues of proof are collateral matters that do not outweigh the useful purposes of bringing a class action.

### 7. Class Action— certification of class—dispositive motions

Dispositive motions such as summary judgment are not properly considered until after a ruling on a motion for class certification.

Appeal by plaintiff, individually and on behalf of all persons similarly situated, from order and opinion filed 7 February 2000 by Judge Ben F. Tennille in Pitt County Superior Court. Heard in the Court of Appeals 17 April 2001.

*The Blount Law Firm, P.L.L.C., by Marvin K. Blount, Jr., and Darren M. Dawson; and Murray & Murray Co., L.P.A., by John T. Murray and Sylvia M. Antalis, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Carl N. Patterson, Jr. and Melinda S. Dumeer, for defendant-appellees American Security Insurance Company and Standard Guaranty Insurance Company.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Reid C. Adams, Jr., Hada V. Haulsee, and John J. Bowers, for defendant-appellee Wachovia Bank of North Carolina, N.A.*

GREENE, Judge.

Margaret Williams Pitts (Plaintiff), individually and on behalf of all persons similarly situated, appeals an order filed 7 February 2000 denying Plaintiff's motion for class certification, pursuant to Rule 23

of the North Carolina Rules of Civil Procedure, of claims against American Security Insurance Company (ASIC), Standard Guaranty Insurance Company (SGIC) (collectively, the American Security Defendants), and Wachovia Bank of North Carolina, N.A. (Wachovia).[1] Additionally, Plaintiff appeals the trial court's 7 February 2000 order granting summary judgment in favor of SGIC and granting partial summary judgment in favor of ASIC.

Plaintiff's claims against the American Security Defendants and Wachovia arise out of a collateral protection insurance (CPI) program[2] underwritten by the American Security Defendants and utilized by Wachovia. The record shows the following undisputed facts: In 1990, Plaintiff purchased a vehicle and financed the purchase through Wachovia. Plaintiff entered into a Note and Purchase Money Security Agreement (the Note) with Wachovia that contained the following pertinent provisions:

> The Purchaser-Debtor agrees to insure the collateral against theft, loss[,] and destruction, with policies acceptable to Seller-Secured Party and payable to Purchaser-Debtor and Seller-Secured Party as their interests may appear. . . .
>
> . . . Seller-Secured Party can, at its option, purchase insurance or perform any other obligations of Purchaser-Debtor for the account of Purchaser-Debtor and, unless Seller-Secured Party is reimbursed for such advance within ten days of notice to Purchaser-Debtor, Seller-Secured Party may, as of the date of such advance, add such advance . . . to the unpaid balance due hereunder.

Subsequent to obtaining the financing, Plaintiff breached her loan agreement with Wachovia on three occasions by failing to maintain

---

1. Plaintiff also named American Security Insurance Group as a defendant in this case; however, in an order filed 2 January 1998, all parties stipulated to the dismissal of Plaintiff's claims against American Security Insurance Group.

2. Generally, a borrower who uses collateral to secure a loan from a lending institution may be required by the terms of the loan agreement to maintain insurance on the collateral. When a borrower breaches the loan agreement by failing to maintain the required insurance, the lending institution may act to insure the collateral and, pursuant to the loan agreement, extend additional credit to the borrower to pay for the insurance provided. To provide insurance for collateral upon a borrower's breach, an insurance company may offer an insurance policy to a lending institution pursuant to a CPI program. Under a CPI program, a borrower who breaches her agreement to maintain insurance on the collateral is automatically placed under a CPI policy that insures the collateral. This placement of a borrower pursuant to a CPI policy is called "force-placement."

the insurance required by the Note. When each breach occurred, Plaintiff was sent notice by Wachovia of her obligation to maintain insurance on the collateral and Plaintiff was force-placed under a CPI policy. The first insurance certificate force-placing Plaintiff became effective on 28 July 1991; the second insurance certificate force-placing Plaintiff became effective on 30 November 1991; and the third insurance certificate force-placing Plaintiff became effective on 20 July 1992. Plaintiff received notice from Wachovia of each forced-placement, and Wachovia extended to Plaintiff additional credit in the amount required to pay for the CPI policies. This amount of additional credit was added to Plaintiff's loan balance with Wachovia. The CPI program used by Wachovia to force-place insurance on borrowers was created by ASIC and, at all relevant times, was underwritten by one of the American Security Defendants.

In a complaint filed 25 March 1996, Plaintiff alleged the following regarding the CPI program underwritten by the American Security Defendants[3] pursuant to which she was force-placed: the amount financed for borrowers by lending institutions to pay for the force-placed insurance was based on the borrowers' gross loan balances, including unearned interest, rather than the net loan balances, resulting in greater profits for the lending institution; the force-placed insurance program "offered numerous endorsements in addition to basic comprehensive and collision coverage" required by the borrowers' lending agreements, and these additional endorsements resulted in a greater extension of credit to the borrowers; the amount of extension of credit for the purchase of the insurance premium was based on the remaining term of the loan rather than a more limited period of time, thereby generating a greater premium and greater loan amount; and the CPI program "offered monetary payments to lenders as an incentive to force-place borrowers," including "administrative fees, special cancellation payments, premium refunds[,] and offers to purchase CD[]s from lending institutions."

Based on the allegations regarding the American Security Defendants' CPI program, Plaintiff alleged claims against the American Security Defendants for tortious interference with contract, unjust enrichment, and unfair or deceptive trade practices. Additionally, Plaintiff alleged claims against Wachovia for unjust

---

3. Plaintiff's 25 March 1996 complaint alleged claims against Wachovia and ASIC based on the CPI program. In an amended complaint dated 21 July 1997, Plaintiff added SGIC as a defendant and alleged identical claims against SGIC as were alleged against ASIC in the 25 March 1996 complaint.

enrichment, breach of contract, breach of good faith and fair dealing, breach of fiduciary duties, fraud/fraudulent concealment, and unfair or deceptive trade practices. Plaintiff alleged these claims individually and on behalf of members of the following proposed class: "All persons and entities who . . . were extended additional credit by Wachovia as a result of an insurance loan program designed and marketed by [the American Security Defendants, for the purchase of the [American Security Defendants' CPI] policy." Additionally, Plaintiff alleged:

> The members of the Class for whose benefit this action is brought are so numerous that joinder of all class members is impracticable. The exact number of the Class is unknown to Plaintiff. However, the number of these persons is reasonably believed to be in excess of 1,000 persons and can be determined from records maintained by [d]efendants.

On 25 March 1996, Plaintiff filed a motion for certification of the proposed class. In a deposition taken 6 March 1997, Plaintiff testified that she understood what it meant to be named as a representative of a class action. Plaintiff testified that she did not know what the terms "tortious interference with contract" and "breach of fiduciary duty" meant; however, she understood that these causes of action dealt with insurance that Wachovia provided when Plaintiff failed to maintain insurance on her vehicle. She also understood she was alleging Wachovia had breached the contract that it had entered into with her.

In motions dated 21 August 1997, the American Security Defendants and Wachovia requested summary judgment on all claims alleged against them. In an order dated 2 February 1998, the trial court denied these motions. The American Security Defendants subsequently filed a second motion for partial summary judgment dated 17 March 1998 on the ground Plaintiff's claims for tortious interference with contract and unjust enrichment as to both ASIC and SGIC were barred by the applicable statutes of limitations. Additionally, the American Security Defendants moved for summary judgment as to Plaintiff's claim for unfair or deceptive trade practices against SGIC on the ground the claim was barred by the applicable statute of limitations. Finally, the American Security Defendants moved for summary judgment as to Plaintiff's unfair or deceptive trade practices claim against ASIC "to the extent that this claim is based on the first two CPI certificates issued to Plaintiff" on the ground the claim was

barred by the applicable statute of limitations. On 14 August 1998, the trial court heard arguments regarding the American Security Defendants' motions for summary judgment and Plaintiff's motion to certify the proposed class. In an order filed 7 February 2000, the trial court granted summary judgment in favor of SGIC as to all of Plaintiff's claims and granted summary judgment in favor of ASIC as to Plaintiff's tortious interference with contract claim and unjust enrichment claim.[4]

Additionally, in its 7 February 2000 order, the trial court addressed the issue of whether a class existed, Plaintiff was an adequate representative for the class, and a class action was the superior method to determine the claims alleged in Plaintiff's complaint.

## I.  existence of a class

Plaintiff argued at the certification hearing that "uniform actions give rise to common issues that predominate over individual issues, rendering the case appropriate for class action treatment." Plaintiff contended "the language in the promissory notes is the same for all potential class members"; "the policies issued by the American Security Defendants were all substantially the same"; "Wachovia's response to a borrower's breach of the loan contract was uniform—a standard notice was sent informing the borrower that Wachovia had force-placed insurance on the collateral"; and "Wachovia owned a master insurance policy covering all potential class members." Subsequent to the certification hearing, the trial court found "there is some common nucleus of operative facts"; nevertheless, the trial court concluded a class did not exist. The trial court recognized the following individual issues: (1) "the proposed class includes individuals who financed the purchase of an automobile through Wachovia from 1969 to the date of the institution of this lawsuit," thus, the applicable statutes of limitations may bar some proposed class members from maintaining the alleged claims; (2) "establishing the elements of fraud requires Plaintiff to make individual showings of facts," thus, Plaintiff's claims "are not appropriate for class action

4. The 2 February 1998 order denying summary judgment was entered by Superior Court Judge D.B. Herring, Jr. Judge Herring subsequently became ill and this case was reassigned to Special Superior Court Judge Ben F. Tennille. Judge Tennille stated in his 7 February 2000 order that the American Security Defendants' 21 August 1997 motion for summary judgment did not allege Plaintiff's claims against them were barred by the statute of limitations; thus, Judge Tennille's consideration of this issue was not barred by the rule that one superior court judge cannot overrule another superior court judge on the same issue in the same case.

treatment"; (3) although "Plaintiff's proof with respect to [claims for breach of contract, breach of fiduciary duty, and breach of duty of good faith and fair dealing] may be common to the class, this [c]ourt finds that proof of damages in this case is individualized" and is a necessary element of Plaintiff's claims; (4) two different policies were issued to Wachovia by the American Security Defendants, one in 1978 and one in 1992, and "[t]he changing circumstances throughout the policy's history [as well as the changing notices sent to borrowers under the different policies] support a finding that a single class does not exist"; (5) the calculation of damages for various class members based on their claim that they were damaged by the commissions Wachovia received will differ depending on the profitability for Wachovia of the CPI program in any given year; (6) there is a conflict of interest between those borrowers who benefitted from a lower deductible under the force-placed insurance and those who were harmed by the lower deductible; and (7) "Wachovia has a potential claim or set-off against [Plaintiff]." The trial court, therefore, determined these "varying factual circumstances support [its] finding that Plaintiff . . . failed to establish the existence of a single identifiable class."

## II. adequacy of class representative

The trial court made the following findings of fact regarding whether Plaintiff would be an adequate class representative of the proposed class: (1) evidence was presented that Plaintiff "has a conflict of interest with other members of the proposed class" because Plaintiff's personal insurance policy had higher premiums than the force-placed policy, the use of the gross loan balance rather than the net loan balance to compute Plaintiff's premium resulted in a lower premium for Plaintiff, Plaintiff's premiums were lower under a remaining-term policy than they would have been under an annual policy, some proposed class members may have benefitted from the issuance of additional endorsements under the force-placed policy, and some proposed class members may have benefitted from a lower deductible under the force-placed policy; (2) Plaintiff has a lack of knowledge surrounding the allegations in the case and she "has not materially participated in the prosecution of this action"; (3) Plaintiff has a criminal record that includes worthless check charges which may affect Plaintiff's credibility; (4) most of the claims asserted by Plaintiff are barred by the applicable statutes of limitations; and (5) rather than seeking counsel to "redress a perceived wrong," Plaintiff was contacted by her bankruptcy attorney, through a letter drafted in

part by class counsel, regarding her potential claim and suggesting she contact class counsel. Based on these findings, the trial court determined Plaintiff was "not an adequate class representative." The trial court did not make any findings regarding whether Plaintiff would be an adequate representative for class members located outside of North Carolina; however, at the hearing on class certification, Plaintiff stated she was seeking certification of a class consisting of North Carolina members only.

### III. numerosity of proposed class

The trial court stated in its order that "[t]he numerosity requirement has not been raised as an issue before the [c]ourt, but is a concern to the [c]ourt because the record in this case is devoid of any factual support for any finding of numerosity." The trial court then stated that "[w]hile the [c]ourt is not declining to certify the class for failure to establish the numerosity requirement, it notes that the requirement is in Rule 23 for a reason and must be met by the party seeking class certification."

### IV. superior method of adjudication

The trial court made the following findings regarding whether a class action was the superior method to determine the claims at issue: (1) "this is a case of de minimus damages"; (2) "multiple causes of action have been asserted, many of which require individualized proof"; (3) "ascertainment of damages will be based upon individual situations"; and (4) "the expansive nature of the proposed class will result in excessive transaction costs and difficulties." Based on these findings, the trial court concluded a class action was not the superior method to determine the claims at issue. The trial court, therefore, denied certification of the proposed class.

---

The issues are whether: (I) the trial court erred by finding "[P]laintiff has failed to establish the existence of a single identifiable class"; (II) the trial court erred by finding Plaintiff "is not an adequate class representative"; (III) the uncontradicted evidence in the record shows Plaintiff established the numerosity of the proposed class; and (IV) the trial court's findings of fact support its conclusion that a class action was not the superior method to determine the claims at issue.

[1] An order denying class certification, though interlocutory in nature, "affect[s] a substantial right" and is, therefore, appealable.

*Frost v. Mazda Motor of Am., Inc.,* 353 N.C. 188, 193, 540 S.E.2d 324, 327 (2000). On appeal, this Court is bound by the trial court's findings of fact if those findings are supported by competent evidence. *Nobles v. First Carolina Communications,* 108 N.C. App. 127, 132, 423 S.E.2d 312, 315 (1992), *disc. review denied,* 333 N.C. 463, 427 S.E.2d 623 (1993).

**[2]** When considering a motion for class certification pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, the trial court must first determine whether the party seeking certification has met its burden of showing that the three prerequisites to certification of a class have been met. *English v. Holden Beach Realty Corp.,* 41 N.C. App. 1, 7, 254 S.E.2d 223, 230, *disc. review denied,* 297 N.C. 609, 257 S.E.2d 217 (1979). The first prerequisite to certification is the existence of a class. *Faulkenbury v. Teachers' and State Employees' Ret. Sys.,* 345 N.C. 683, 697, 483 S.E.2d 422, 431 (1997). "[A] 'class' exists under Rule 23 when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Crow v. Citicorp Acceptance Co., Inc.,* 319 N.C. 274, 280, 354 S.E.2d 459, 464 (1987).

The second prerequisite to certification is that the named class representatives will "fairly and adequately represent the interests of all members of the class." *Faulkenbury,* 345 N.C. at 697, 483 S.E.2d at 431. To fairly and adequately represent the class members, the class representatives must have no conflict of interest with the members of the class, the class representatives "must have a genuine personal interest, not a mere technical interest, in the outcome of the case," and the "class representatives within this jurisdiction [must] adequately represent members outside the state." *Id.*

The third prerequisite to certification is that the proposed class members are "so numerous that it is impractical to bring them all before the court." *Id.* The test for "impracticability" is "not 'impossibility' of joinder, but only difficulty or inconvenience of joining all members of the class." *English,* 41 N.C. App. at 6-7, 254 S.E.2d at 229. "The number is not dependent upon any arbitrary limit but rather upon the circumstances of each case." *Id.* at 7, 254 S.E.2d at 229. Additionally, there is no requirement that the party seeking certification allege in her certification motion the exact number of proposed class members or their identities. *See* 1 *Newberg on Class Actions*

§ 3.05, at 3-18 -19 (3d ed. 1992) [hereinafter, *Class Actions*].[5] Such a requirement "would foreclose most class litigation because of the impossibility of identifying all class members at the outset and would make large class suits unduly burdensome because of the great expense involved in identifying members." *Id.* at 3-19 -21.

If the trial court finds the party seeking certification has established the three prerequisites to certification, the trial court must then determine whether "a class action is superior to other available methods for the adjudication of th[e] controversy." *Crow*, 319 N.C. at 284, 354 S.E.2d at 466. A class action "should be permitted where [it is] likely to serve useful purposes such as preventing a multiplicity of suits or inconsistent results"; however, the trial court must balance these useful purposes against "inefficiency or other drawbacks." *Id.* at 284, 354 S.E.2d at 466. When making this determination, the trial court is not limited to the consideration of the prerequisites to bringing a class action as previously set forth. *Nobles*, 108 N.C. App. at 132, 423 S.E.2d at 315. Some proper considerations include, but are not limited to, the amount of recovery compared to the cost of administration of the lawsuit, *see Maffei v. Alert Cable TV*, 316 N.C. 615, 621-22, 342 S.E.2d 867, 872 (1986), "the interest of members of the class in individually controlling the prosecution or defense of separate actions," "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the difficulties likely to be encountered in the management of a class action," *see* Fed. R. Civ. P. 23(b)(3). A conclusion as to whether a class action is the superior method of adjudication is within the discretion of the trial court and is binding on appeal absent an abuse of discretion. *Crow*, 319 N.C. at 284, 354 S.E.2d at 466. Nevertheless, the trial court must make findings of fact to support its conclusion. *See Nobles*, 108 N.C. App. at 132-33, 423 S.E.2d at 315-16.

---

5. We note that *Class Actions* focuses on Federal Rule 23 and cases interpreting that rule. Thus, the cases cited in *Class Actions* are not binding on this Court. Nevertheless, to the extent that we cite to *Class Actions*, we find the reasoning of the commentary, as well as the cases cited therein, instructive. *See Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 16, 454 S.E.2d 278, 286 (1995) (reasoning of federal class action cases, though not binding, may be instructive), *disc. review denied* 340 N.C. 260, 456 S.E.2d 831 (1995).

I

*existence of a class*

**[3]** In this case, the trial court stated that while "there is some common nucleus of operative facts," Plaintiff's case contains numerous individual issues that render class treatment inappropriate. First, the trial court found as an individual issue that the statute of limitations might bar some class members from maintaining the proposed claims. This consideration by the trial court that Wachovia and/or the American·Security Defendants may have a defense to claims asserted by some members of the proposed class relates to the merits of individual plaintiff's claims and should not be considered at the certification stage of the proceedings. *See* 1 *Class Actions* § 3.16, at 3-88 -90 (defenses applicable to individual class members should be resolved in a trial on the merits and do not preclude maintenance of a class action, as the focus of class certification "is properly on the typicality of the plaintiff's claim as it applies to the general liability issues [and] not on the plaintiff's ultimate ability to recover"); *see, e.g., Hamilton*, 118 N.C. App. at 11-12, 454 S.E.2d at 283-84 (some members of the class unable to recover based on the merits of their claims). The trial court, therefore, erred by considering possible defenses when it made the determination that the common issues did not predominate over issues affecting individual class members.

Second, the trial court found as an individual issue that "proof of damages in this case is individualized." While individualized proof of damages may be considered when determining whether a class exists, the relevant inquiry is whether the common issues of law or fact in the case predominate over the individualized damages issue. Thus, when a plaintiff establishes an issue of law common to all class members, the possibility of individualized damages is a collateral matter.[6] *See Faulkenbury*, 345 N.C. at 698, 483 S.E.2d at 431-32 (rejecting the defendant's argument that, because the recoveries of the proposed class members will vary, the proposed class should not be certified); 1 *Class Actions* § 3.16, at 3-87 (most courts have

---

6. We acknowledge that damages is an element of Plaintiff's contract claim and, thus, the proposed class members would have to prove the existence of damages to succeed on such a claim. As it is unclear at this preliminary stage of the proceedings how damages will be determined in this case and whether all members of the proposed class would be able to prove damages, it is error to find a class necessarily does not exist based on the possibility that some proposed class members may not be able to prove damages. If the proposed class is certified and it is determined at trial that some class members cannot prove damages, then individual claims that require proof of damages may be dismissed.

rejected argument that differences in amount of individual damages render class action improper). Moreover, the trial court may not consider the measure of damages until the nature of a breach has been determined; thus, such a consideration is often premature at the certification stage of the proceedings. *See Maffei*, 316 N.C. at 620, 342 S.E.2d at 871 (when the nature of the breach is uncertain and is to be resolved at a trial on the merits, the measure of damages cannot be determined at the certification stage of the proceedings). The issue of damages, therefore, must be considered in the context of whether the common issues of law or fact predominate over any collateral issue as to individualized damages.[7]

Third, the trial court found as an individual issue that "establishing the elements of fraud requires Plaintiff to make individual showings of facts" on the element of reliance and, thus, Plaintiff's claims "are not appropriate for class action treatment."[8] The effect of the trial court's finding is to conclude, as a matter of law, that a class does not exist for the purposes of class certification whenever the actions asserted by the proposed class will require individualized showings of facts. There is no requirement under Rule 23, however, that the claims asserted in a class action be factually identical as to all class members. Rather, the requirement for the existence of a class is that the same issue of law or fact predominate over any individual issues. Thus, the trial court erred by finding a class necessarily did not exist because Plaintiff's claims included a claim for fraud. *See Mills v. Carolina Cemetery Park Corp.*, 242 N.C. 20, 30, 86 S.E.2d 893, 900 (1955) (plaintiff properly brought action on behalf of himself and other owners of cemetery lot who were allegedly defrauded based on representations made by defendant regarding lots, as each class member who was induced by defendant's representations has a common interest with plaintiff). Moreover, the benefit of allowing consumer fraud actions to proceed as class actions must be considered when determining whether the element of reliance, an individual issue, renders a class non-existent. "The desirability of providing recourse for the injured consumer who would otherwise be finan-

---

7. Similarly, a finding that "Wachovia has a potential claim or set-off against [Plaintiff]" raises a collateral matter as to Plaintiff's individual damages. While this collateral matter may be considered when determining whether a class exists, the proper test is whether the common issues of law or fact predominate over this collateral matter, in conjunction with any other individual issues raised.

8. To recover in an action for fraud in North Carolina, a Plaintiff must show actual reliance. *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 663, 464 S.E.2d 47, 57 (1995).

cially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 4 *Class Actions* § 21.29, at 21-55; *see also Maffei*, 316 N.C. at 620, 342 S.E.2d at 871 (recognizing "one of the basic purposes of class actions is to provide a forum whereby claims which might not be economically pursued individually can be aggregated in an efficient an economically reasonable manner"). A class, therefore, may exist in cases involving fraud claims when the common issues of fact or law predominate over any individual issues. Further, in weighing whether the common issues predominate over any individual issues, the trial court should consider public policy favoring protection of consumers from fraud in cases where, absent the availability of a class action, the consumers would for economic reasons be unlikely to bring an action against the offending parties.

Finally, the trial court found as an individual issue that alleged changes in Wachovia's CPI policy with the American Security Defendants, made in 1978 and 1992, create individualized issues in this case. The trial court stated these changes in the policies could result in differing damages as well as the need for individualized showings on the claims for fraud. As noted above, individualized damages is a collateral issue and, although individualized showings may be required in actions for fraud, this does not in and of itself preclude a finding of the existence of a class.

In summary, the trial court erred when ruling on the existence of this class when it considered possible defenses to the claims alleged by Plaintiff and found a class necessarily does not exist in cases involving actions for fraud. Thus, the potential individual issues that remain in this case are the collateral issue of damages and the individual showing required in a fraud action. These potential individual issues are outweighed by the common issues of law and fact. Such common issues include: (1) "the language in the promissory notes is the same for all potential class members"; (2) "the policies issued by the American Security Defendants were all substantially the same"; (3) "Wachovia's response to a borrower's breach of the loan contract was uniform—a standard notice was sent informing the borrower that Wachovia had force-placed insurance on the collateral"; and (4) "Wachovia owned a master insurance policy covering all potential class members." Accordingly, we hold the trial court erred when it found a class did not exist.

II

*adequacy of class representative*

[4] In this case, the trial court found Plaintiff was not an adequate class representative. First, the trial court found Plaintiff "has a conflict of interest with other members of the proposed class" because Plaintiff's personal insurance policy had higher premiums than the force-placed policy, the use of the gross loan balance rather than the net loan balance to compute Plaintiff's premium resulted in a lower premium for Plaintiff, and Plaintiff's premiums were lower under the remaining-term policy than they would have been under the annual policy. These three findings by the trial court do not demonstrate a conflict of interest as to the common claims alleged in Plaintiff's complaint; rather, these findings demonstrate that Plaintiff's damages may be different from the damages of other class members. A difference in the amount of damages does not create a material conflict of interest between Plaintiff and the other proposed class members. *See Faulkenbury*, 345 N.C. at 698, 483 S.E.2d at 431-32 (differing interests among members of class does not necessarily create a conflict of interest as to the common issues that define the class). Furthermore, as the appropriate method for calculating the alleged damages suffered by the class members is uncertain at this point in the proceedings, the record does not support the trial court's finding that issues surrounding Plaintiff's alleged damages create a conflict of interest. Additionally, the trial court found as a conflict of interest that some proposed class members may have benefitted from the issuance of additional endorsements under the force-placed policy and some of the class members may have benefitted from a lower deductible under the force-placed policy. However, there is no evidence in the record to support a finding that any members of the proposed class benefitted from the allegedly wrongful additional endorsements and lower deductible. *See* 1 *Class Actions* § 3.25, at 3-136 ("[m]any courts have held that speculative conflict should be disregarded at the class certification stage"). Furthermore, assuming some class members did benefit from these alleged breaches of their contracts, these benefits are relevant to the issue of damages and do not create a material conflict of interest between Plaintiff and members of the proposed class. Thus, the trial court erred by finding Plaintiff is an inadequate class representative based on a conflict of interest.

Second, the trial court found Plaintiff was an inadequate class representative because she has a lack of knowledge surrounding the allegations in the case and she "has not materially participated in the

prosecution of this action." Initially, we note that the record does not contain evidence to support the trial court's finding that Plaintiff "has not materially participated in the prosecution of this action." The record shows Plaintiff filed an affidavit in this case and gave extensive deposition testimony. Plaintiff's apparent lack of appearance at pretrial hearings, such as the 14 August 1998 hearing on Plaintiff's motion for class certification, is not a material lack of participation. Additionally, a plaintiff's knowledge regarding the allegations in her complaint is relevant to her adequacy as a class representative only to the extent that a lack of knowledge prevents the plaintiff from insuring "the interests of absent class members will be adequately protected." *See English*, 41 N.C. App. at 7, 254 S.E.2d at 230. A class representative is not rendered unsuitable because she lacks knowledge of the details of her case or the legal theories presented. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 15 L. Ed. 2d 807, 814 (1966) (plaintiff's lack of understanding of allegations in complaint did not subject her shareholder derivative action to dismissal); 1 *Class Actions* § 3.34, at 3-165 (most courts have rejected challenge to adequacy of class representative based on the class representative's ignorance of facts or theories of liability). The record in this case shows Plaintiff was unable to explain in her deposition testimony the legal nature of her claims and was unable to define "tortious interference with contract" or "fiduciary." Nevertheless, Plaintiff's testimony demonstrated she understood that her claims related to Wachovia providing her with insurance on her vehicle after she failed to provide the required insurance. She also understood that she was alleging Wachovia breached its contract with her. Plaintiff's lack of knowledge at her deposition as to the specific legal nature of her claims does not render her unable to protect the interests of the proposed class members. Thus, the trial court erred by finding Plaintiff's lack of knowledge rendered her an inadequate class representative.

Third, the trial court found Plaintiff is an inadequate class representative because she has a criminal record that includes worthless check charges. As with any factors concerning a plaintiff's adequacy to represent a class, a plaintiff's personal background, including previous criminal convictions, must be considered based on whether such a background will prevent the plaintiff from representing the interests of the class. In this case, the trial court found Plaintiff's previous criminal convictions would affect her ability to represent the interests of the class because the criminal convictions might be admitted into evidence to impeach Plaintiff's credibility at

trial. Thus, to the extent that these criminal convictions harm Plaintiff's credibility as a witness, the trial court properly considered the convictions.

Fourth, the trial court found Plaintiff was not an adequate class representative because some of her claims may be barred by the applicable statutes of limitations. The issue of whether a plaintiff might ultimately prevail on the merits of her claim is not a proper consideration for whether she is an adequate class representative. *See* 1 *Class Actions* § 3.29, at 3-149 (the "named plaintiff need not demonstrate a probability of success on the merits or show in advance that he or she suffered damages in order to serve as the class representative"). If, subsequent to class certification, Plaintiff's claims are dismissed based on the statute of limitations, a substitute class representative may be provided to represent the class on the claims that have been dismissed. The trial court, therefore, erred by considering possible defenses to Plaintiff's claims when addressing whether Plaintiff is an adequate class representative.

Finally, the trial court noted at length in its order that Plaintiff did not seek counsel to "redress a perceived wrong"; rather, Plaintiff received a letter from her attorney suggesting that she might have a claim. This consideration regarding how Plaintiff became aware of her possible claims has no relevance to Plaintiff's adequacy as a class representative. Indeed, it seems likely that should the proposed class be certified in this case, the other members of the class will learn of their potential claims without first seeking counsel to "redress a perceived wrong." The focus of Plaintiff's adequacy as a class representative must remain on whether Plaintiff is able to represent the interests of the proposed class members. Thus, the trial court erred in this consideration.

In summary, the trial court erred when ruling on Plaintiff's adequacy as a class representative when it considered: (1) alleged conflicts of interest that relate to the damages of members of the proposed class, (2) Plaintiff's alleged lack of knowledge surrounding the allegations in her complaint, (3) that some of Plaintiff's claims may be barred by the statute of limitations, and (4) that Plaintiff did not seek counsel to "redress a perceived wrong." Thus, the only remaining finding by the trial court regarding Plaintiff's adequacy as a class representative is that Plaintiff has a criminal record that includes worthless check charges; however, when weighed against all other factors, the record does not support a finding that Plaintiff's criminal record renders her inadequate to represent the interests of the proposed

class. We, therefore, hold the trial erred by finding Plaintiff is not an adequate class representative. Additionally, we note that while the trial court did not make any findings regarding whether Plaintiff was an adequate class representative for class members outside of this State, the record shows Plaintiff sought certification of a class consisting solely of North Carolina members. Thus, this factor was not relevant to a determination of class certification.

## III

### *numerosity of proposed class*

**[5]** In this case, the trial court did not make any findings regarding the numerosity of the proposed class. Plaintiff alleged the existence of a class "reasonably believed to be in excess of 1,000 persons." Additionally, Plaintiff alleged the identity of the proposed class members "can be determined from records maintained by [d]efendants." These allegations by Plaintiff are sufficient to satisfy the numerosity requirement that it would be impractical to join all members of the proposed class. Further, the record does not contain any evidence Plaintiff's estimation of the class size is not a good faith estimate. *See* 1 *Class* Actions § 3.05, at 3-20 (good faith estimate of class size sufficient). Generally, when a trial court fails to make required findings of fact, the case must be remanded to the trial court for entry of findings. *See Sholar Business Assocs. v. Davis*, 138 N.C. App. 298, 303, 531 S.E.2d 236, 240 (2000). However, when the evidence in the record as to a finding is not controverted, remand is not required. *See id.* at 304, 531 S.E.2d at 240. Because Plaintiff's allegations are sufficient to support a finding of numerosity and the evidence regarding numerosity is not controverted, we hold Plaintiff has met her burden of establishing this prerequisite to certification.

## IV

### *superior method of adjudication*

**[6]** In this case, the trial court concluded a class action was not the superior method to determine the claims at issue based on the following findings of fact: (1) "this is a case of de minimus damages"; (2) "multiple causes of action have been asserted, many of which require individualized proof"; (3) "ascertainment of damages will be based upon individual situations"; and (4) "the expansive nature of the proposed class will result in excessive transaction costs and difficulties." The record in this case does not contain any evidence as to the actual amount of damages the class members would recover should they

succeed on their claims; therefore, the record does not contain competent evidence to support the trial court's finding regarding the de minimus nature of damages. Similarly, the record does not contain any evidence to support the trial court's finding that "the expansive nature of the proposed class will result in excessive transaction costs and difficulties." Finally, the trial court's remaining findings regarding individualized issues of proof, including proof as to damages, are collateral matters in this case that do not outweigh the useful purposes in bringing a class action such as preventing multiplicity of suits and inconsistent results. *See Dublin v. UCR, Inc.,* 115 N.C. App. 209, 214-17, 221, 444 S.E.2d 455, 458-60, 462 (upholding certification of class as superior method of adjudication when class consisted of an estimated 4,000 members, action included claims for breach of contract and unfair or deceptive trade practices, and damages would presumably be small as to individual plaintiffs), *disc. review denied and appeal dismissed,* 337 N.C. 800, 449 S.E.2d 569 (1994). Accordingly, the trial court erred when it found Plaintiff did not meet her burden of establishing the prerequisites to certification. Additionally, the trial court abused its discretion when it concluded a class action was not the superior method to determine the claims at issue. The trial court's 7 February 2000 order is, therefore, reversed and this case is remanded to the trial court for entry of an order allowing Plaintiff's motion for class certification.

*order granting summary judgment*

[7] Dispositive motions, such as motions for summary judgment, are not properly considered by the trial court until after ruling on a motion for class certification. *See* 2 *Class Actions* § 7.15, at 7-51 (noting recent decisions in several jurisdictions have held that "class certification issues should be addressed before consideration of a dispositive motion"). In addition to promoting judicial economy, the rationale for this rule is that, should a class be certified, the class would have an opportunity to provide a substitute class representative for any claims disposed of as to the individual plaintiff. *See* 59 Am. Jur. 2d *Parties* § 79, at 499 (1987) ("certification of class is to be undertaken with no consideration of the merits of the [named] plaintiffs' claims"); 59 Am. Jur. 2d *Parties* § 58, at 466, § 87, at 508-09 (proper class representative may be substituted if the named class representative is no longer a proper representative because of her conduct or her interests).

In this case, the trial court ruled on the American Security Defendants' motions for summary judgment subsequent to its denial

of certification. However, because we reverse the certification portion of the trial court's 7 February 2000 order, we vacate the summary judgment portion of that order. On remand, the trial court must enter an order certifying Plaintiff's proposed class. Subsequent to entry of a certification order, the trial court may consider any dispositive motions as to Plaintiff's claims and the claims of other individual class members.

Reversed in part, vacated in part, and remanded.

Judges WALKER and McGEE concur.